**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JONATHAN JORDAN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | 1:14-CV-373-LY |
| | § | |
| CROSSROADS UTILITY SERVICE, LLC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Crossroads Utility Service, LLC's Motion for Summary Judgment, filed May 5, 2015 [Dkt. #20]; Plaintiff Jonathan Jordan's Response to Defendant's Motion for Summary Judgment, filed June 6, 2015 [Dkt. #26]; and Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment, and Objections to Plaintiff's Summary Judgment Evidence, filed July 2, 2015 [Dkt. #28].

On May 19, 2015, the parties to the above-styled cause filed their Notice, Consent, and Reference of A Civil Action to A Magistrate Judge [Dkt. #23]. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73(a), and Appendix C, Rule 1(i) of the Local Rules for the Western District of Texas, this case was reassigned from United States District Judge Lee Yeakel to United States Magistrate Judge Mark Lane for all purposes on May 21, 2015 [Dkt. #25]. After reviewing the parties' pleadings, the relevant case law, as well as the entire case file, the undersigned GRANTS Crossroads Utility Service, LLC's Motion for Summary Judgment [Dkt. #28] for the reasons outlined below.

I.     **BACKGROUND**

Plaintiff Jonathan Jordan ("Jordan" or "Plaintiff") was hired at Defendant Crossroads Utility Service, LLC ("Crossroads" or "Defendant"), a water and wastewater utilities servicing company, in March, 2012, after obtaining the required minimum certification of a Class D Wastewater License from the State of Texas. 30 Tex. Admin. Code § 30.350(a); Jordan Dep. 19-25; Abshire Decl. at 1-2. Jordan's position, Water/Wastewater Operator, further required a Class D Water License. Jordan Dep. 28-29; Abshire Decl. at 2. Jordan was hired as a probationary employee and immediately began the classes necessary to obtain a Class D Water License, which he soon acquired. Jordan Dep. 19-23, 29; Abshire Decl. at 2. His probationary employment period was scheduled to last until August 1, 2012. Abshire Decl. at 2.

The Class D Water/Wastewater Operator position requires working a majority of the workday in the outdoor elements. Jordan Dep. 27; Abshire Decl. at 3. In addition, under Texas law, an individual working as a Class D Operator requires supervision for most tasks, including indoor tasks. 30 Tex.Admin. Code § 30.350(c), (n); Jordan Dep. 32-33, 37; Abshire Decl. at 2-3. At the time Jordan began working at Crossroads his known skin condition, plaque psoriasis, did not affect his ability to fulfill his job requirements in any way. Jordan Depo. 27, 45, 33; Abshire Decl. at 3.

Around July 2012, Jordan was diagnosed with Discoid Lupus Erythematosus ("Lupus") and informed by his doctor he could no longer work in the sun because sunlight is correlated to increased risk of melanoma in individuals with Lupus. Jordan Dep. 47-48, 52, 55-56**.** Other than this limitation, Jordan was not restricted in any other life activities due to Lupus, including

that of working generally. Jordan Dep. 51. Soon thereafter, on July 21, 2012, Plaintiff notified his supervisors, William Abshire and Steve Bessner, that he would need to look for another job because his diagnosis prevents him from being exposed to the sun. Jordan Dep. 52-53; Abshire Decl. at 4. At that initial meeting Jordan did not provide any documentation of his diagnosis or the necessity to avoid sun exposure. However, documentation from his doctor confirming this limitation and requesting reasonable accommodation for him was provided to Crossroads at a later date. Jordan Dep. 54, 56.

When informing his supervisors of his condition, Jordan inquired about indoor operator jobs that would allow him to continue his position at Crossroads. Jordan Dep. 57-58; Abshire Decl. at 4. However, his supervisors knew all Operator jobs for which Jordan was qualified require significant time spent in the sun. At the time there were no vacancies in the Billing or Customer Services Divisions, the only indoor positions at Crossroads. Abshire, Decl. at 4. Consequently, Jordan's supervisors informed him there were no opportunities available at Crossroads for an individual unable to work in the sun. Jordan Dep. 53; Abshire Decl. at 4. They agreed Jordan would continue to work until the end of his probationary period, August 1, 2012, and in the meantime Crossroads would search for his replacement. Jordan Dep. 54; Abshire Decl. at 4.

After this conversation, Jordan went to Elisha Vaughan, the Office Manager at the time, and told her of his Lupus diagnosis and that he needed to find a new job as a result. Vaughan Dep. 47. Unfortunately, Vaughan had no indoor reception-type job openings available, which Plaintiff claims to have articulated he would have accepted. Jordan Dep. 58. Vaughan, as Office Manager, also knew there was no reasonable accommodation that could allow Jordan to continue

his position without being exposed to the sun. Vaughan Dep. 50. Vaughan's conclusion is supported by Abshire's explanation of the reason Crossroads does not have a Class D operator position that works night shifts. Abshire Decl. at 3. Class D Operators rotate on an on-call basis to respond to customer emergencies at night, but these calls are not regular or consistent enough to justify a full-time employee. Abshire Decl. at 3. Further, a Class D Operator working at night would most likely require a higher level Operator to be assigned the night shifts as well to provide the supervision required by law. 30 Tex. Admin. Code § 30.350 (c), (n); Abshire Decl. at 3.

Following these discussions, Jordan continued to work as a Class D Operator until August 1, 2012, by wearing SPF 90 sun screen, long-sleeved shirts, and large-brimmed hats in the sun. Jordan Dep. 55. He made it clear, however, that these were only a temporary solutions and his doctor's orders strictly forbade sun exposure. Jordan Dep. 56; Abshire Decl. at 4-5. In the meantime, Crossroads hired a replacement for Jordan scheduled to start on August 1, 2012. Abshire Decl. at 4. Because an individual was lined up to replace Jordan, his request to finish his last work week was denied. Abshire Decl. at 5. Jordan's resignation letter was written by Vaughan on Abshire's request, and was the first resignation Vaughan had written for an employee. Vaughan Dep. 42-44. On August 1, 2012, Jordan signed the letter in the presence of Vaughan and Bessner, after adding "due to medical reasons" in the margin of the document. Jordan Dep. 60-61.

Jordan brought suit on May 5, 2014, asserting failure to accommodate and wrongful termination in violation of the Americans With Disabilities Act ("ADA"). [Dkt. #1]. Crossroads now moves for summary judgment on both claims. [Dkt. #20].

## II.   STANDARD OF REVIEW

### A.   Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Davis v. Fort Bend County*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

### B.     Disability Discrimination Under the ADA

The ADA is a federal antidiscrimination statute which prohibits discrimination in employment against a qualified individual on the basis of his disability. 42 U.S.C.A. § 12112(a) (West 2009); *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 221-22 (5th Cir. 2011). Thus, the threshold issue in an ADA case is establishing the plaintiff suffers from a disability protected by the statute. 42 U.S.C.A. §§ 12102(2), 12112(a); *See also Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998). Upon this showing, an ADA plaintiff must then demonstrate he is a "qualified individual," meaning "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability in regards to, *inter alia*, "the discharge of employees…and other terms, conditions, and privileges of employment." *See* 42 U.S.C.A. §12112(a). The ADA specifically recognizes that discrimination includes the failure to accommodate the known physical or mental disability of an otherwise qualified individual, and requires that an employer, absent undue hardship, provide reasonable accommodation to such individual. *See* §§ 12102(2), 12112(b)(a).

## III. ANALYSIS

Defendant now moves for summary judgment on Plaintiff's claim that it discriminated against Plaintiff in violation of Title II of the Americans with Disabilities Act ("ADA") by: 1) failing to provide reasonable accommodation for his disability; and 2) terminating his employment because he is disabled. [Dkt. #20].

In its Motion for Summary Judgment, Defendant Crossroads argues that Jordan does not suffer a disability as defined by the ADA, nor is he a qualified individual for the relevant position. [Dkt. # 20].  Defendant further contends there was no reasonable accommodation available at the time for Plaintiff's alleged disability, and denies that it committed the adverse employment action of terminating Plaintiff's employment. *Id.*

### A. Jordan suffers from a disability but was not a "qualified individual" under the ADA.

A person with a disability under the ADA is one who has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g) (2009).  The scope of the term "disability" under the ADA was significantly broadened by the 2009 amendments, implemented by the ADAA.  42 U.S.C.A. § 12102 et seq.; *see also* 29 C.F.R. Pt. 1630 §1630.2(g) (2014) (EEOC's interpretive guidance on the term "disability" after the implementation of the ADAA.).  The ADA as amended explicitly provides "major life activities" includes the operation of "major bodily functions" and identifies the "function of the immune system" as a qualifying "major bodily function" under the Act. 42 U.S.C.A. § 12102(2)(B); 29 C.F.R. Pt. 1630, App. § 1630.2(i).  Accordingly, because Lupus

is an autoimmune disease, the court assumes *arguendo* that Plaintiff is disabled under the ADA. *Id.*

To be awarded relief under the ADA the Plaintiff must also demonstrate he was qualified for the job. 42 U.S.C.A. §§ 12112 (a), 12111(8). It is not disputed that Jordan satisfied the prerequisites for his position as a Class D Operator. Jordan Dep. 19-25; Abshire Decl. at 1-2. However, Defendant asserts Plaintiff is not a "qualified individual" because he could no longer perform essential functions of his job and there were no reasonable accommodations available to enable Plaintiff to perform those essential functions. *See* 42 U.S.C.A. § 1211(8); [Dkt. #20]. The ADA is not intended to relieve a disabled employee from the obligation to perform the essential functions of the job. *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 808 (5th Cir. 1997). "To the contrary, the ADA is intended to enable disabled individuals to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled." *Id.* (citing 29 C.F.R. § 1630, App. §160.2(n). Crossroads has presented evidence supporting its Motion for Summary Judgment that working outdoors during daylight hours is an essential function of a Class D Operator job, and Jordan does not dispute that working in the sun was essential to his work as a Class D Operator. Jordan Dep. 52, 55-56; Abshire Decl. at 5.

The summary judgment record shows that, at the time of his alleged discharge, Plaintiff was unable to perform the essential job function of working in the sun. Jordan Dep. 52, 55-56; Abshire Decl. at 5. Consequently, defeating Defendant's Motion for Summary Judgment on the failure to accommodate claim depends on whether Plaintiff can raise a genuine issue of material fact that a reasonable accommodation was available that would have enabled him to continue his

employment at Crossroads. *See Hammond v. Jacobs Field Services*, 499 F.App'x 377, 381 (5th Cir. 2012).

### B.     Failure to Accommodate

Jordan claims Crossroads discriminated against him in violation of the ADA by failing to provide him with a reasonable accommodation for his disability. [Dkt. #1]; [Dkt. #27].  For Jordan to prove a prima facie case on his failure to accommodate claim, he must demonstrate that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. *Cortez v. Raytheon Co.*, 663 F.Supp.2d 514, 524 (5th Cir. 2009).  When a prima facie case of failure to accommodate is raised, the burden is on the employer to present credible evidence that reasonable accommodation was not possible. *See Perwitt v. U.S. Postal Service*, 662 F.2d 292, 310 (5th Cir. 1981).  If this burden is met, the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for unlawful discrimination. *Hammond*, 499 F.App'x at 381.  As a preliminary matter, it not disputed that the alleged disability was known by the employer.  Plaintiff thus establishes this element of his prima facie case. *Cortez*, 663 F.Supp.2d at 524; Jordan Dep. 552-53; Abshire Decl. at 4.  The remaining elements are contested by the parties.

> ### i.     *The record does not reflect any reasonable accommodation was available.*

Plaintiff argues that there were reasonable accommodations for his disability which Defendant wrongly failed to provide. [Dkt. #20]; [Dkt. #27].  In general, it is the responsibility of the disabled individual to inform the employer an accommodation is needed, and upon such request the employer is required to engage in an interactive process, so that together they can

determine what reasonable accommodations may be available. *See* 29 C.F.R. 1630, App. §1630.2(o); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 622 (5th Cir. 2009); *Taylor v. Principal Fin Group, Inc.,* 93 F.3d 155, 165 (5th Cir. 1996) ("The responsibility of fashioning a reasonable accommodation is shared between the employee and the employer.").

Soon after being diagnosed with Lupus, Plantiff notified his supervisors he would need to look for a new job and asked about indoor jobs at the company. Jordan Dep. 52, 57-58; Abshire Decl. at 4. Given the circumstances and Defendant's knowledge of the limitations of Plaintiff's condition, this constitutes a request for accommodation. *See E.E.O.C.*, 570 F.3d at 6221 ("A jury…could reasonably find that, since CPChem knew that [Plaintiff] had required medical leave due to her CFS, it knew that the release related to this condition, and that she therefore had adequately communicated the nature of her condition and her requested accommodations."). In response, Jordan's supervisors voiced that there was nothing at the company for an individual unable to work in the sun, because there were no indoor Operator jobs and no vacant Billing or Customer Service positions. Abshire Decl. at 4. This was further confirmed by the Office Manager when Plaintiff informed her of his situation. Vaughan Dep. 50. At the end of the initial discussion regarding Plaintiff's predicament, Plaintiff and his supervisors agreed that he would continue to work as an Operator through his probationary period, August 1, 2012, and Crossroads would find someone to replace him thereafter. Jordan Dep. 60-64; Abshire Decl. at 4.

Although the content of these conversations did not necessarily amount to an interactive discussion of reasonable accommodation, Jordan's repeated emphasis that he could not work in the sun in any capacity made such a discussion impossible. *See Cato v. First Fed. Comm. Bank*,

668 F.Supp.2d 933, 947 (E.D.Tex. 2009) (finding that Plaintiff's repeated statements that she could not return to her position in any capacity precluded any discussion of reasonable accommodation). Further, by voicing his need to "find another job" and signing his resignation letter, Jordan terminated the interactive process, making any discussion of accommodation that may have been provided after his resignation pure speculation. *See Griffin*, 661 F.3d at 225 (5th Cir. 2011). Even assuming Defendant had some continuing opportunity to continue the interactive process, Defendant cannot be found in violation of the ADA based on not engaging in further discussions with Plaintiff. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999). The interactive process is not an end in itself—it is a means to the end of forging reasonable accommodations. *Id.* In order for an alleged breakdown in the "interactive process" to be considered an ADA violation, Jordan must produce evidence that a reasonable accommodation would have been possible had Crossroads continued to participate in a good faith interactive discussion. *Silva v. City of Hidalgo*, 575 F. App'x 419, 424 (5th Cir. 2014).

Thus, to defeat Crossroad's motion for summary judgment, Jordan must show there was an accommodation available at the time that seemed reasonable on its face. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). If this initial showing is made, the burden then falls on Crossroads to demonstrate that the accommodation identified by Plaintiff would cause it to suffer undue hardship. *See id.* at 402. As a reasonable accommodation, Jordan asserts Defendant could have restructured his existing job requirements or reassigned him to a vacant job position. *See* 42 U.S.C.A. § 12111(9)(B) ("The term "reasonable accommodation" may include–job restructuring...[or] reassignment to a vacant position..."); [Dkt. # 26].

### a. Restructuring was not feasible.

In order for job restructuring to constitute a "reasonable accommodation" under the ADA, the restructuring must only require the employer to reallocate or redistribute nonessential, marginal job functions. 29 C.F.R. Pt. 1630, App. §1630.2(o). An employer is not required to reallocate essential functions or modify the duties an individual would have to perform with or without reasonable accommodation to be qualified for the position. *Id.*; *see also Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999). As discussed above, working in sun is an essential function of any Class D Operator position at Crossroads. The ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential," and Abshire's Declaration definitively states working outside during sunlight hours is essential to the job. *See* 29 C.F.R. Pt. 1630, App. §1630.2(o); Abshire Decl. at 3.

While Plaintiff argues he could have worked night shifts, the record reflects that there are no night shift positions, nor enough night calls to justify a full-time night position. Abshire Decl. at 3. In addition, because Texas law requires most Class D Operator tasks to be supervised, Jordan's proposed night shifts would likely necessitate a higher certified operator to be staffed as well, and the ADA does not require an employer to accommodate a disabled employee in a way which adversely affects other employees. 30 Tex. Admin. Code § 30.350(c), (n)*; see also Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 2008) (holding that moving one operator to a straight day shift would place a burden on other operators, which is not required by the ADA.).

It is not a reasonable accommodation to require the Defendant to eliminate an essential function of the job and in effect create a new job for the plaintiff, which would be the case if Defendant restructured Plaintiff's job in such a way to allow him to only work at night. *See Foreman*, 117 F.3d at 809 ("Here the plaintiff is not seeking merely restructure of this job...Plaintiff seeks to entirely change one of his primary job functions."). Thus, Plaintiff fails to identify a reasonable accommodation by suggesting he could have worked nights only. *Id.*

*b. No vacant positions were available as of August 1, 2012.*

The ADA provides that an employer should reassign the disabled individual to a different position if the individual is qualified and the position is vacant within a reasonable amount of time. 29 C.F.R. Pt. 1630, App. §1630.2(o) ("A 'reasonable amount of time' should be determined in light of the totality of the circumstances."). Plaintiff claims that Crossroads had available indoor positions in the Billing and Customer Service Department at the time between his diagnosis and his resignation; however the record reflects no competent evidence in support of this contention. Vaughan Dep. 64; Jordan Dep. 95; Abshire Decl. at 4.

Plaintiff, in his Response to Defendant's Motion for Summary Judgment, sets out several ineffective arguments in an attempt to satisfy his burden of showing that a vacant position was available in which he could have been relocated. [Dkt. #27]. Plaintiff relies on his own opinion that he could have been assigned to an indoor customer service position to help with the workload, since one employee was frequently out of the office caring for her ill daughter. [Dkt. #27]. However, the ADA does not require an employer to reassign an employee to an occupied position or "bump" another employee to create a vacancy, which essentially was Plaintiff's recommendation. *Henderson v. N.Y. Life, Inc.*, 991 F.Supp. 527, 540 (citing *Turco*, 101 F.3d at

13

1094).  Thus the anecdote of another employee's frequent absence and the Plaintiff's mere observation of an empty reception desk cannot support his inference that a receptionist job was needed and available in July/August 2012.  *Griffen*, 661 F.3d at 225 (holding that Plaintiff's opinion that a vacancy could have been made available was irrelevant in the absence of his ability to identify any record evidence that an available position actually existed).  Nor can the Office Manager's statement that the company has grown significantly and had to hire more office employees a year and a half after Jordan's alleged termination show that there was a vacancy in any reasonably foreseeable amount of time back in July and August of 2012. Vaughan Dep. 15-17.  Jordan Dep. 95.  On the contrary, the record specifically contradicts any such inference, including Plaintiff's own statement admitting he did not actually know of any indoor vacancy at the relevant time.  Jordan Dep. 95; Vaughan Dep. 63-64; Abshire Decl. at 4.

In an effort to paint the "no vacancies" argument as pretext, Plaintiff claims Defendant refused a direct request from the Owner of Crossroads, Steve Held, to transfer Jordan inside. [Dkt. #27].  Yet the evidence cited in support of this contention reflects that Held merely asked the Office Manager whether Crossroads had an available Customer Service position in which to transfer Plaintiff.  Vaughan Dep. 63-64.  To this, the Office Manager's response was definitively no, there was no need for another Customer Service Representative at the time.  Vaughan Dep. 63-64.  The unfortunate absence of an available accommodation in response to the Owner's inquiry is quite different from Plaintiff's accusation that transfer to a qualifying available position was refused by Defendant.  *See Foreman*, 117 F.3d at 810 (holding that Plaintiff's perception that a position could have been available was not sufficient to satisfy his burden of proving that a vacant position existed).

Plaintiff's opinions and recommendations, proffered in hindsight and based on loosely constructed inferences, cannot satisfy his burden of production to establish that an indoor position was available in August/July 2012. *See id.* "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Griffen*, 661 F.3d at 224. For an accommodation to be reasonable, it is clear that a position must first exist and be vacant, as the ADA does not require an employer to give what it does not have. *Foreman*, 117 F.3d at 810. Plaintiff is unable to present competent evidence of record that would raise a material fact issue regarding whether there an indoor position available at the time he requested accommodation of his disability. *See Anderson*, 477 U.S. at 252. Therefore, Plaintiff cannot establish a prima facie claim for failure to accommodate and cannot defeat Defendant's Motion for Summary Judgment on this claim. *See Cortez,* 663 F.Supp.2d at 524; *see also Foreman*, 117 F.3d at 810.

### C. Wrongful Termination Claim

Jordan contends that Crossroads violated the ADA by discharging him for his disability. [Dkt. #1]. The ADA prohibits an employer from discriminating against a qualified individual with a disability in regards to the discharge of employee. 42 U.S.C.A. § 12112(a). It is not contested that Jordan had to cease working as a Class D Operator at Crossroads because of his disability. [Dkt. #1]; [Dkt. #20]. It is debated between the parties, however, if in fact Jordan suffered an adverse employment action by being terminated or constructively discharged, or if instead he voluntarily resigned. [Dkt #1]; [Dkt. #20].

The record plainly shows Jordan stated both to his supervisors and the Office Manager that he "needed to look for another job" after his Lupus diagnosis. Jordan Dep. 52-53; Abshire Decl. at 4; Vaughan Dep. 47. Following this initial announcement, the Office Manager was ordered to write Jordan's resignation letter and his job was filled just days after Jordan notified Crossroads of his disability. Abshire Decl. at 4; Vaughan Dep. 42-44. Further, Plaintiff requested and was denied the ability to finish his last work week. Abshire Decl. at 5. Based on these facts of record, Plaintiff raises a genuine issue for trial that he was terminated or constructively discharged. Nonetheless Plaintiff must still show that he is disabled under the Act and that he was qualified for the job, with or without reasonable accommodation, to succeed in defeating Defendant's Motion for Summary Judgment. 42 U.S.C.A. § 1211(8); *see also Neely v. PSEG Texas, Ltd. Partnership*, 735 F.3d 242, 245 (5th Cir. 2013).

As discussed above, the court is of the opinion that Jordan is "disabled" under the ADA because Lupus substantially limits a major bodily function, the immune system. 42 U.S.C.A. § 12102(2)(B). However Jordan is not a "qualified individual" because he is unable to perform an essential function of an Operator job, working in the sun. Jordan Dep. 30, 47-48, 52-56; Abshire Decl. at 3-4. Nor has Jordan presented sufficient evidence that Crossroads could have provided him with any reasonable accommodation that the ADA would require. *Foreman*, 117 F.3d at 810.

Plaintiff cannot raise a genuine issue of material fact that he is qualified for the job or that Defendant failed to reasonably accommodate his disability, and therefore cannot satisfy his prima case of disability discrimination. *Neely*, 735 F.3d at 242. Thus, Plaintiff's wrongful

termination claim must also be dismissed on summary judgment. *Cortez*, 663 F. Supp. 2d at 525.

## IV. CONCLUSION

In accordance with the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Dkt. #20] is GRANTED.

**IT IS FURTHER ORDERED** that all claims brought by Plaintiff Jonathan Jordan against Crossroads Utility Service, LLC are hereby **DISMISSED WITH PREJUDICE.**

It is **FINALLY ORDRED** any motions that remain pending in this case are **DISMISSED AS MOOT**.

                                    **SIGNED** on August 10, 2015.

                                    _____

                                    MARK  LANE
                                    UNITED STATES MAGISTRATE JUDGE